# In the United States Court of Federal Claims

**FOR PUBLICATION**

No. 24-976C
(Filed: July 30, 2025)

|  |  |
|---|---|
| **PHYLLIS ZENO COLEMAN**, | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) |
| **UNITED STATES**, | ) ) |
| *Defendant.* | ) ) |

*Alan D. Ezkovich*, Ezkovich & Co., LLC, New Orleans, LA, for plaintiff.

*Isabelle Aubrun*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. With her on the briefs were *Brett A. Shumate*, Assistant Attorney General, and *Patricia M. McCarthy*, Director, and *Eric P. Bruskin*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC.

## OPINION AND ORDER

**BONILLA, *Judge***.

      Through this action, the former spouse of a retired service member seeks to recover the Survivor Benefit Plan (SBP) annuity promised in their divorce settlement. Recently addressing the governing statutory scheme, the United States Court of Appeals for the Federal Circuit made two things clear. First, under 10 U.S.C. §§ 1448 and 1450, entitlement to receive an SBP annuity defaults to the surviving spouse. *Bannister v. United States*, 139 F.4th 1300, 1303 (Fed. Cir. 2025). Second, to invoke the former spouse exception, either the service member must have affirmatively elected former spouse coverage, or the claimant must have timely submitted a request for a deemed election of former spouse coverage. *See id*. at 1304–05. Today, this Court is called upon to address a follow-on issue: whether the retired service member or former spouse satisfied the affirmative election or request for deemed election requirements of §§ 1448(b)(3) and 1450(f)(3). Unfortunately for the claimant, the short answer is no.

## BACKGROUND

Arthur J. Coleman served in the United States Marine Corps from March 29, 1976, until his retirement on January 31, 2000.  Rising to the rank of Master Sergeant (MSgt/E-8), his billets included aviation supply and drill instructor.  Early in his military career, MSgt Coleman was reportedly featured in the national television commercial and billboard campaign "The Few. The Proud. The Marines."  While on active duty, on January 21, 1989, MSgt Coleman married plaintiff Phyllis T. Zeno (n/k/a Phyllis Z. Coleman).[1]  The Marine Corps formally recognized Ms. Coleman's service as a military spouse a decade later.  Prior to his retirement, MSgt Coleman designated Ms. Coleman and their niece/legal ward as his beneficiaries for any unpaid retired pay and, relevant here, elected SBP coverage for spouse and children.[2]

Following his retirement from active duty, MSgt Coleman continued to serve in the United States Department of Defense (DOD) Office of Equal Employment Opportunity as an investigator.  Thereafter, on September 14, 2004, MSgt and Ms. Coleman's fifteen-year marriage ended in divorce.  Finalizing their divorce, the couple executed a marital settlement agreement (MSA) dated September 2, 2004, incorporated into the California state court judgment of dissolution entered two weeks later.  Under the heading "Husband's Military Retired Pay (In Pay Status)," MSgt Coleman agreed to award Ms. Coleman thirty-two percent of his monthly gross military retired pay, including future cost-of-living increases, dating back to October 6, 2003.  AR 364 (alteration to capitalization).[3]  He also agreed to continue his elected SBP coverage:

> *Husband shall name Wife as a 50% irrevocable beneficiary of the Survivor Benefit Plan.*  In the event Wife chooses to become solely responsible for the benefit payments, then Husband shall remove his niece[/legal ward] from said plan. *This provision is a "deemed election" which Wife may directly enforce* . . . .  Should [niece/legal ward] no longer qualify as a beneficiary of the Survivor Benefit Plan, Wife shall continue to be a 50% irrevocable beneficiary of said plan as set forth above.

AR 365 (emphasis added).  Two weeks later, on September 28, 2004, Ms. Coleman filed an Application for Former Spouse Payments from Retired Pay (DD Form 2293) with DFAS.  As memorialized in the MSA, incorporated into the judgment of dissolution, Ms. Coleman requested thirty-two percent of MSgt Coleman's monthly

---

[1] MSgt Coleman's previous marriage ended in divorce two years earlier.  For clarity, all references to "Ms. Coleman" throughout this opinion are to the plaintiff.  As exhibited *infra*, the administrative record includes variations of plaintiff's maiden, married, and divorced name.

[2] MSgt Coleman's Data for Payment of Retired Personnel (DD Form 2656), also signed by Ms. Coleman on November 15, 1999, elected SBP coverage with a reduced base amount.

[3] "AR __" is a citation to the administrative record.

retired pay. Appended to the DD Form 2293 were complete copies of the divorce decree and MSA along with a signed Direct Deposit Authorization (DFAS-CL Form 1059) dated October 1, 2004.

By letter dated October 26, 2004, DFAS acknowledged receipt of Ms. Coleman's "application for payment of a portion of [MSgt Coleman's] retired/retainer pay . . . under the Uniformed Services Former Spouses' Protection Act (10 U.S.C. § 1408)." AR 385. DFAS then outlined the procedural protections afforded MSgt Coleman to contest the requested garnishment and the anticipated timing of Ms. Coleman's first distribution. Relevant here, the October 26, 2004 DFAS letter further explained:

> If your divorce decree specifies that you are to be designated as a former spouse beneficiary for the Survivor Benefit Plan (SBP), you must make a "deemed election" for SBP coverage within one year of the date of your divorce directly to the Retired Pay office; DFAS, US Military Retirement Pay, PO Box 7130, London, KY 40742-7130. If you have any questions regarding SBP coverage, you may call the Retired Pay office at 1-800-321-1080.

*Id.* Ms. Coleman began receiving monthly disbursements of a portion of MSgt Coleman's retired pay in December 2004. She also received a lump sum payment in the amount of nearly $6,500, presumably for the retired pay due between October 2003 and November 2004.

On February 7, 2005, MSgt Coleman wrote DFAS requesting that his marital status be changed to "unmarried or single."[4] AR 386. MSgt Coleman's letter further "requested that an itemized earnings statement showing deductions of retired pay to former spouse and applicable tax deductions be provided." *Id.* He then posed a series of income tax questions related to the division of his retired pay, requesting a DFAS consultation. The record is devoid of any further communication between MSgt Coleman and DFAS. As noted below, DFAS failed to act on MSgt Coleman's request to change his marital status at any time prior to his death over a decade later. Notwithstanding his change in marital status and his niece/legal ward later reaching the age of majority, MSgt Coleman continued to pay SBP premiums until his death.[5]

---

[4] The administrative record is not clear whether MSgt Coleman's February 7, 2005 facsimile transmission to DFAS included only the dissolution judgment or the incorporated MSA as well, or any attachments at all. The letter simply references: "Enclosure (1) is a copy of the San Diego Superior Court Dissolution Judgment effective September 14, 2004." AR 386. That said, the one-page cover letter is the sole page in the administrative record bearing the unique facsimile header. Notwithstanding the Court's inquiries prior to and during oral argument, neither party could offer anything beyond supposition.

[5] Prior to MSgt Coleman's death, his designated niece/legal ward reached the age of majority and no longer qualified for an SBP child annuity. Nothing in the administrative record suggests that

Following the couple's divorce, Ms. Coleman intermittently called and corresponded with DFAS over the years to update her mailing address and confirm her continued entitlement to MSgt Coleman's retired pay and SBP benefits. *See, e.g.*, AR 387–412 (DFAS correspondence), 425–26 (mailing address update); *see also* AR 496–508 (narrative), 658–59 (congressional correspondence). As documented in a November 27, 2016 letter, for example, Ms. Coleman "provid[ed] *another copy* of [her] 2004 divorce decree as requested in reference to the 'former spouse' SBP coverage for a former spouse . . . ." AR 387 (emphasis added). Ms. Coleman's letter reflected her continuing frustrations with DFAS:

> Once documentation was originally submitted in 2004[] I requested confirmation of SBP and was informed that I would not receive any confirmation or any cost/premium in reference to SBP for my records as this was my former spouse['s] account. So, to my knowledge[] the process was in place and submitted documentation was all that was needed to confirm and process SBP coverage.
>
> I had no reason to doubt what I was told as I had provided a copy of my divorce decree **within the requested 1 year of the date of the divorce and in compliance with court order**. I also submitted change of address to both [DFAS] addresses in reference to change of address in 2006 and received no information of the **SBP not being honored**.
>
> It was not until recently that I was informed that there was a problem and I needed to send another copy of the final divorce decree. I look forward to the correction of this error and a speedy and favorable resolution to this process.

AR 387–88 (bold in original). As discussed *supra*, the apparent disconnect between Ms. Coleman and DFAS lies in the agency's failure to change MSgt Coleman's marital status in the DOD database. When Ms. Coleman inquired about the SBP annuity, DFAS officials reportedly confirmed her beneficiary status under the mistaken (and unspoken) impression that she was still MSgt Coleman's spouse.

MSgt Coleman married Robin Coleman on April 25, 2012. They remained married until his death on June 25, 2018. Two weeks after MSgt Coleman's death, DFAS terminated Ms. Coleman's monthly retired pay payments. Ms. Coleman filed a Verification for Survivor Annuity (DD Form 2656-7) on July 10, 2018, thereafter submitting additional supporting documents requested by DFAS. Upon receipt of

---

Ms. Coleman exercised her right under the MSA to assume responsibility for the SBP premiums entitling her to be the sole beneficiary.

Ms. Coleman's application, an internal DFAS database still listed "Phyllis T. Coleman" as MSgt Coleman's spouse.[6, 7]  AR 414.

By letter dated October 1, 2018, DFAS denied Ms. Coleman's claim for an SBP annuity.  DFAS explained that Ms. Coleman's eligibility as MSgt Coleman's "spouse" expired when the couple divorced, and that the necessary paperwork to convert spousal coverage to a "former spouse" election—requested or deemed—was not timely submitted by either MSgt Coleman or Ms. Coleman.  The Defense Office of Hearings and Appeals (DOHA) denied Ms. Coleman's successive appeals on July 27 and December 9, 2020.  The Board for Correction of Naval Record (BCNR) summarily denied Ms. Coleman's application for administrative relief (DD Form 149) on November 12, 2021, explaining that she did not have the necessary legal relationship with MSgt Coleman at the time of his death.[8, 9]

## DISCUSSION

### I. Standard of Review

In the analogous context of the Public Safety Officers' Benefits Act of 1976,[10] the Federal Circuit adopted the following three-part test to review the denial of death benefits by the United States Department of Justice's Bureau of Justice Assistance:

---

[6] Because Ms. Coleman identified herself as MSgt Coleman's *former* spouse, the DFAS telephone log entry notes that the caller was not MSgt Coleman's spouse and includes the following comment: "Former spouse is Phyllis[.] Member was remarried to a woman named Robin."  AR 414 (alteration to capitalization). In fact, until recently, the government was seemingly unaware of MSgt Coleman's marriage to Robin Coleman.  *See, e.g.*, AR 1001 (DFAS internal email dated August 5, 2022: "[W]e [have] no information about Robin Coleman. The member[']s SBP still has Phyllis Coleman listed as the spouse."); AR 1010 (March 10, 2018 screenshot of MSgt Coleman's "SBP Information" lists "Coleman Phyllis T" as the current annuitant); AR 1006–08 (DOD Defense Enrollment Eligibility Reporting System (DEERS) database search dated June 29, 2021, does not list Robin Coleman among MSgt Coleman's relatives.  Instead, DEERS lists MSgt Coleman's two former wives, including Ms. Coleman, and their adult niece/legal ward).

[7] Ms. Coleman filed a separate Claim for Unpaid Compensation of Deceased Member of the Uniformed Services (SF 1174) on July 23, 2018.  DFAS remitted just over $400 to Ms. Coleman for "arrears" on December 8, 2021, representing MSgt Coleman's retired pay for June 1-25, 2018, less deductions for the final SBP premium, former spouse payment already remitted to Ms. Coleman, and unspecified unrecovered funds.

[8] Throughout these administrative proceedings, Ms. Coleman enlisted a United States Department of the Air Force Casualty Assistance Representative and eventually retained counsel.

[9] On April 3, 2025, Robin Coleman filed an application for an SBP annuity as MSgt Coleman's surviving spouse.  During oral argument, the government represented that her application remained pending with DFAS.

[10]   *See* Pub. L. No. 94–430, 90 Stat. 1346 (codified as amended at 42 U.S.C. §§ 3796–3796c (2000)) (current version at 34 U.S.C. §§ 10281–88 (2022)).

> (1) whether there has been substantial compliance with statutory requirements and provisions of implementing regulations; (2) whether there has been any arbitrary or capricious action on the part of the government officials involved; and (3) whether substantial evidence supports the decision denying the claim.

*Amber-Messick v. United States*, 483 F.3d 1316, 1321 (Fed. Cir. 2007) (first citing *Yanco v. United States*, 258 F.3d 1356, 1362 (Fed. Cir. 2001); and then citing *Chacon v. United States*, 48 F.3d 508, 511 (Fed. Cir. 1995)), *quoted in Lobo v. Dep't of Just.*, 139 F.4th 1311, 1316 (Fed. Cir. 2025). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lobo*, 139 F.4th at 1316 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## II. Former Spouse Election

The default payee of an SBP annuity is the surviving spouse. *See* 10 U.S.C. § 1450(a)(1); *cf. Bannister*, 139 F.4th at 1303 (citing 10 U.S.C. § 1448(d)(1)). To perfect former spouse coverage under the statutory exception codified in § 1448(b)(3), the current or former service member (i.e., program participant) must submit an affirmative written election of former spouse coverage within one year of the divorce or dissolution of the marriage. More specifically, subsection (b)(3), titled "Former spouse coverage by persons already participating in Plan," specifies the "[m]anner and time of election" as: "Any such election must be written, signed by the person making the election, and received by the Secretary concerned within one year after the date of the decree of divorce, dissolution, or annulment." 10 U.S.C. § 1448(b)(3)(A)(iii).

At the time of MSgt and Ms. Coleman's divorce, the Secretary of Defense offered several vehicles for retired servicemembers to make an affirmative election of former spouse coverage, including the SBP Election Certificate by Existing Retiree (DD Form 1881) and the SBP Election Change (DD Form 1882). *See* DOD FMR Vol. 7B, Ch. 43 ¶ 430301 (Sept. 1999). The governing DOD regulation further provided a catchall: "Elections in writing, signed by the member, which contain information necessary for establishing or declining coverage are acceptable." *Id.* MSgt Coleman never completed the cited forms or otherwise submitted an affirmative election of former spouse SBP coverage.

Although submitted within one year of the couple's divorce, MSgt Coleman's February 7, 2005 fax to DFAS makes no mention of SBP, nor does it constitute an affirmative election of former spouse coverage. Rather, the letter requests that his marital status be adjusted to reflect his divorce, and further seeks accounting and tax information related to his recently-garnished retired pay. Ms. Coleman's reliance upon MSgt Coleman's possible attachment of the MSA to his fax is misplaced. Even assuming MSgt Coleman appended both the referenced dissolution judgment and

non-referenced MSA,[11] the onus did not fall upon DFAS to comb through the twenty-five-page contractual arrangement between MSgt and Ms. Coleman in search of potential obligations to enforce between the parties. As stated in the MSA: "*Husband* shall name Wife as a 50% irrevocable beneficiary of the Survivor Benefit Plan." AR 365 (emphasis added). Therefore, MSgt Coleman did not make an affirmative election pursuant to § 1448(b)(3), nor did he substantially comply with the regulatory requirements. As noted in the MSA, if MSgt Coleman failed to honor this obligation, enforcement fell to Ms. Coleman: "This provision is a 'deemed election' which Wife may directly enforce." *Id.*

### III. Deemed Election

To satisfy the statutory requirements of a deemed election of former spouse SBP coverage, as reflected in the framing of 10 U.S.C. § 1450(f)(3), the former spouse must submit two documents to the DOD Secretary within one year of the couple's divorce:

> **(i) Request from former spouse.**—
> A written request, in such manner as the Secretary shall prescribe, from the former spouse concerned requesting that such an election be deemed to have been made.
>
> **(ii) Copy of court order or other official statement** [evidencing the divorce].

10 U.S.C. § 1450(f)(3)(A) & (C) (emphasis in original). Consistent with this statutory framework, in the year following MSgt and Ms. Coleman's divorce, the governing DOD regulation titled "Deemed Elections Requested By the Former Spouse" provided: "On deemed elections[] requested by the former spouse or the former spouse's attorney, *the request* for the Secretary of the Military Department concerned to deem that an election has been made *is accompanied by* a court order or a statement from the clerk of the court." DOD FMR Vol. 7B, Ch. 43 ¶ 430302 (emphasis added). Subparagraph C of Paragraph 430503, titled "Deemed Elections" similarly provided in relevant part:

> The former spouse or the former spouse's attorney makes a written request. The request is acceptable if it refers to, or cites provisions in a court order concerning SBP former spouse coverage, or makes clear by other references to SBP that there is an intent that the coverage be provided to a former spouse. The written request *is accompanied by* a copy of the court order and/or a statement from the clerk of the court. . . .

---

[11] As explained in *supra* note 4, MSgt Coleman's February 7, 2005 fax references only the state court dissolution judgment, presumably submitted to document his claimed divorced status.

DOD FMR Vol. 7B, Ch. 43 ¶ 430303(C) (emphasis added). [12]

Ms. Coleman timely submitted to DFAS a formal request for a specific percentage of MSgt Coleman's *retired pay* accompanied by a copy of the couple's divorce decree and incorporated MSA. However, her Application for Former Spouse Payments from Retired Pay (DD Form 2283) dated September 28, 2004, neither mentions SBP nor otherwise requests a deemed election. Critical here, in processing the application, by letter dated October 26, 2004, DFAS alerted Ms. Coleman: "If your divorce decree specifies that you are to be designated as a former spouse beneficiary for the Survivor Benefit Plan (SBP), you must make a 'deemed election' for SBP coverage within one year of the date of your divorce directly to the Retired Pay office . . . ." AR 385. Accordingly, Ms. Coleman was placed on notice that her September 28, 2004 submission was not considered by DFAS to serve as a request for a deemed election of former spouse SBP coverage. There is no record of Ms. Coleman submitting a follow-up request for a deemed election of former spouse SBP coverage within one year of her and MSgt Coleman's September 14, 2004 divorce. Therefore, Ms. Coleman did not actually or substantially comply with the statutory or regulatory requirements. *See, e.g.*, *Woll v. United States*, 41 Fed. Cl. 371, 375 (1998) ("[P]laintiff was required, within one year from the date of the divorce decree, to submit written notification of her demand and acceptance of SBP benefits.").

Ms. Coleman's reliance upon the MSA appended to her timely-submitted DD Form 2283 fails for the same reason discussed with respect to MSgt Coleman's non-election of former spouse coverage: DFAS cannot be held generally responsible for reviewing, identifying, and interpreting a couple's contractual arrangement and enforcing the division of marital assets. Stated differently, the written request must specify the asset or action sought from DFAS, whereas the attached documentation must evidence the basis for the claimed entitlement. To conclude otherwise would necessarily convert DFAS's neutral administrative payment processing function into an investigative and advocacy role. Upon the record presented, this Court must conclude that the denial of Ms. Coleman's claim was not arbitrary or capricious and, to the contrary, was supported by substantial evidence.

At bottom, MSgt Coleman failed to honor his contractual obligation to Ms. Coleman to make an affirmative election of former spouse SBP coverage under § 1448(b)(3). Ms. Coleman in turn did not submit a timely request for a deemed election of former spouse coverage under § 1450(f)(3). These two facts compel the conclusion that Ms. Coleman is not entitled to the claimed SBP annuity. *See Bannister*, 139 F.4th at 1305. DFAS's continued designation of Ms. Coleman as MSgt Coleman's spouse—notwithstanding their divorce in September 2004, and MSgt Coleman's marriage to Robin Coleman in April 2012—while in error, does not excuse MSgt Coleman's and Ms. Coleman's noncompliance with the requirements of

---

[12] The SBP Former Spouse Request for Deemed Election (DD Form 2656-10) was not introduced until October 1, 2008.

§§ 1448(b)(3) and 1450(f)(3).[13]  As noted by the Federal Circuit in *Bannister*, this Court is "without authority to waive statutory requirements."  139 F.4th at 1305.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the administrative record (ECF 14) is DENIED and defendant's cross-motion for judgment on the administrative record (ECF 21) is GRANTED.  The Clerk of Court is directed to enter judgment accordingly.  No costs.

It is so **ORDERED**.

                                                        Armando O. Bonilla
                                                        Judge

---

[13] During oral argument, the government acknowledged that Ms. Coleman may be entitled to a refund of a portion of the SBP premiums deducted from MSgt Coleman's retired pay following their divorce.  Presumably, this issue is inextricably intertwined with Robin Coleman's pending application for an SBP annuity as MSgt Coleman's surviving spouse which is not before this Court.  Accordingly, the Court leaves to DFAS to evaluate these outstanding issues in the first instance.